UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JASMINE U. COCHRAN,
        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,
        Defendant.

---

DECISION & ORDER
17-CV-6828-JWF

## Preliminary Statement

Plaintiff Jasmine U. Cochran ("plaintiff" or "Cochran") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her application for benefits. See Compl. (Docket # 1). Presently before the Court are competing motions for judgment on the pleadings. See Docket # 15, 18. For the reasons explained more fully below, plaintiff's motion for judgment on the pleadings (Docket # 15) is **granted**, the Commissioner's motion for judgment on the pleadings (Docket # 18) is **denied**, and the case is remanded for further proceedings consistent with this Decision and Order.

## Background and Procedural History

On June 18, 2014, plaintiff protectively filed her application for Supplemental Security Income under Title XVI of the Act, alleging an onset date of June 18, 2014. Administrative Record, Docket # 11 ("AR"), at 254-59. Plaintiff, who was 22-years old at the time she filed her application, alleged that she

1

was disabled due to mental health issues, right knee pain, lower back pain, and asthma. AR at 254-59. Her application was initially denied. AR at 175-80.

On May 24, 2016, plaintiff, represented by counsel, appeared at a videoconference hearing before Administrative Law Judge Michael J. Kopicki ("the ALJ"). AR at 27-86. Plaintiff and a vocational expert testified at the hearing. On August 12, 2016, the ALJ issued an unfavorable decision. AR at 10-21. At Step Two of the five-step sequential disability determination process, the ALJ found plaintiff had both severe exertional impairments (degenerative disc disease of the lumbar spine) and non-exertional impairments (depressive disorder and attention deficit hyperactive disorder). AR at 12. With respect to plaintiff's exertional capacity, the ALJ found that Cochran had the residual functional capacity ("RFC") to perform light work except she could only lift 20 pounds occasionally and 10 pounds regularly and could sit, stand, or walk for 6 hours in an 8-hour day. AR at 15. As to plaintiff's non-exertional functional limitations, the ALJ found that Cochran "can understand, remember and carry out simple instructions involving repetitive tasks in a setting that involves no more than occasional contact with the general public." AR at 15.

Plaintiff appealed the ALJ's decision to the Appeals Council ("the AC") and the AC denied plaintiff's appeal on October 11,

2017, making this the final decision of the Commissioner. AR at 1-6. Cochran commenced this action on December 1, 2017. Docket # 1. She filed for judgment on the pleadings on August 24, 2018 (Docket # 15), and the Commissioner filed its motion for judgment on the pleadings on October 23, 2018 (Docket # 18). Plaintiff replied on November 23, 2018 (Docket # 19).

For purposes of this Decision and Order, the Court assumes the parties' familiarity with the medical evidence, the ALJ's decision, and the standard of review, which requires that the Commissioner's decision be supported by substantial evidence. See Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir. 2007) (so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed), cert. denied, 551 U.S. 1132 (2007).

## Discussion

The administrative record reviewed by the ALJ contained fifteen medical opinions. Eleven of those opinions came from plaintiff's treating sources, including plaintiff's physician since she was a child and her long-time mental health therapists at Catholic Family Center. Despite the fact that all of these medical sources found that plaintiff would be very limited in her ability to concentrate, the ALJ failed to assign substantial – let

alone the controlling - weight to any opinion from any of the treating sources. Instead, the ALJ chose to give "substantial weight" to the opinion of (1) a medical consultant who never met, spoke to, or examined plaintiff and (2) the opinion of a consultative evaluator who met plaintiff twice and gave contradictory reports. See AR at 17. By giving the most weight to the opinions which are owed the least weight and the least weight to the opinions the regulations require be afforded the most weight, the ALJ committed error that requires remand.

The focus of the Court's analysis is on the ALJ's treatment of plaintiff's severe non-exertional limitations. Simply put, it is troubling that the ALJ afforded "substantial weight" to non-treating sources who indicated that plaintiff would have only mild mental limitations and "little weight" to the opinions from plaintiff's own treating doctors and therapists who arrived at the opposite conclusion after treating plaintiff for her mental health issues for many years.

This error is particularly problematic with respect to the ALJ's analysis of a "psychological consultant" who assessed plaintiff's mental health limitations without ever actually meeting or speaking to plaintiff. "In the context of a psychiatric disability diagnosis, it is improper to rely on the opinion of a non-treating, non-examining doctor because the inherent subjectivity of a psychiatric diagnosis requires the physician

4

rendering the diagnosis to personally observe the patient." Velazquez v. Barnhart, 518 F. Supp. 2d 520, 524 (W.D.N.Y. 2007) (remand required where ALJ credited a psychiatric opinion "based on a review of a cold, medical record"); see Vargas v. Sullivan, 898 F.2d 293, 295 (2d Cir. 1990) ("The general rule is that the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability.") (internal quotation marks omitted); Rodriguez v. Astrue, No. 07CIV.534 WHPMHD, 2009 WL 637154, at *25 (S.D.N.Y. Mar. 9, 2009) ("[A] doctor who has direct contact with a claimant—even as an examining doctor—is likely to have a better grasp of her condition than someone who has never seen the claimant."); Filocomo v. Chater, 944 F. Supp. 165, 170 n.4 (E.D.N.Y. 1996) ("[T]he conclusions of a physician who merely reviews a medical file and performs no examination are entitled to little if any weight.").

Here, the ALJ gave "substantial weight" to the opinion of the non-treating state agency consultant, who never met or personally assessed plaintiff but somehow was able to conclude that plaintiff would have no marked limitations in performing unskilled work. And, in so doing, the ALJ specifically conceded that the "psychological consultant" based this opinion "on a review of only a portion of the evidence in the record, some of which was admitted after they rendered their opinions." AR at 17.

The ALJ also relied significantly on the December 2014 opinion from consultative evaluator Christine Ransom, Ph.D., who opined that plaintiff would show no difficulty following simple directions, performing simple tasks, and maintaining attention, concentration, and a schedule. AR at 17, 427. According to Dr. Ransom, plaintiff would only have "mild difficulty" performing complex tasks relating to others, and in appropriately dealing with stress and hence, plaintiff's psychiatric conditions would "not significantly interfere with [plaintiff's] ability to function on a daily basis." AR at 17. Again, in the context of a record like this one, replete with the opinions of <u>treating</u> mental health professionals, relying on a non-treating medical source is problematic, particularly when dealing with psychological impairments and limitations. In general, "ALJs should not rely heavily on the findings of consultative physicians after a single examination." <u>Selian v. Astrue</u>, 708 F.3d 409, 419 (2d Cir. 2013). This is because "consultative exams are often brief, are generally performed without the benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day." <u>Cruz v. Sullivan</u>, 912 F.2d 8, 13 (2d Cir. 1990) (internal quotation marks omitted). "When weighing the opinion of a non-treating source, the ALJ must consider how closely the opinion aligns with the objective medical record evidence, which is similar to its evaluation of a treating source."

6

Cardoza v. Comm'r of Soc. Sec., 353 F. Supp. 3d 267, 283 (S.D.N.Y. 2019).

The error here was not harmless for several reasons. First, Dr. Ransom's 2014 opinion, upon which the ALJ primarily relies, is inconsistent with an opinion given a year earlier by Dr. Ransom. In a May 13, 2013 opinion, Dr. Ransom indicated that plaintiff would be "moderately limited" in ability follow directions and attend and maintain a routine and schedule and "very limited" in ability to perform complex tasks independently, capability to maintain attention and concentration, and capability to perform low stress and simple tasks. AR at 739. Second, even if it was appropriate for the ALJ to unquestioningly adopt the views of Dr. Ransom's 2014 opinion, Dr. Ransom's revised opinion was contradicted by substantial evidence obtained from plaintiff's treating doctors, hospital records, mental health treatment providers, and plaintiff's own testimony.

For example, the opinions from plaintiff's treating doctor, W. Stewart Beecher, M.D., demonstrate that plaintiff was more limited in mental functioning than the ALJ would allow based on his reliance on non-treating sources. Beginning in early 2013, Dr. Beecher, who had treated plaintiff since she was a child, (AR at 731), submitted no fewer than four medical opinions, which the ALJ either expressly or implicitly rejected in his decision. The first, a Psychological Assessment for Determination of

Employability completed on January 25, 2013, indicated that plaintiff presented with mental health issues and right knee pain, and diagnosed her with PTSD, bipolar disorder, intermittent explosive disorder, and ADHD. AR at 731-33. Dr. Beecher recommended that plaintiff begin physical therapy for her knee and get back into mental health care counseling. AR at 733.

On July 28, 2014, Dr. Beecher again completed another Psychological Assessment for Determination of Employability, where he observed that plaintiff had "great difficulty concentrating" and "hears voices" in addition to complaining of "severe mid-low back pain." AR at 742. Dr. Beecher opined that plaintiff would be very limited (unable to function 25% or more of the time) in capacity to perform simple and complex tasks independently and capacity to maintain attention and concertation for rote tasks. AR at 744. Importantly, Dr. Beecher indicated that he had evaluated Cochran between 8 and 10 times in the past 12 months. AR at 742.

Several months later, on or about October 20, 2014, Dr. Beecher completed a Physical Assessment for Determination of Employability, and again noted plaintiff's diagnosis for bipolar disorder and chronic back and knee pain. AR at 747. He noted that plaintiff had a "mildly scattered, pressured" appearance and opined that plaintiff would be very limited (limited to 1-2 hours per 8-hour work day) in ability to stand, sit, push, pull, bend,

8

and carry. AR at 749. Despite these physical limitations, Dr. Beecher indicated that plaintiff would be unable to work for at least 6 months due to continuous mental health treatment. AR at 747. Dr. Beecher also noted that he had evaluated plaintiff between seven and eight times in the last 12 months. AR at 746.

Finally, on April 13, 2016, Dr. Beecher completed a Physical Residual Functional Capacity Questionnaire, in which he again addressed plaintiff's low back pain, leg pain, and bipolar disorder. AR at 823. While much of the opinion was focused on plaintiff's physical limitations, Dr. Beecher also opined that her emotional issues "contribute to the severity of [Cochran's] symptoms and physical limitations" and that her pain would "constantly" interfere with her attention and concertation. AR at 824. He submitted that plaintiff would be "incapable of even 'low stress' jobs" because of her "temperament," namely, "impulsive, angry outbursts." AR at 824.

The record pays tribute to the fact that Dr. Beecher was not an outlier when it came to his opinions on plaintiff's mental health issues and limitations. For example, on August 13, 2015, plaintiff's treating therapists at Catholic Family Center - Alyssa Hancock and Melissa Shoemaker - opined, like Dr. Beecher, that plaintiff would be very limited (unable to function 25% or more of the time) in capacity to maintain attention and concentration for rote tasks. AR at 764. They further opined that plaintiff would

9

be moderately limited (unable to function 10-25% of the time) in capacity to follow, understand, and remember simple instructions; capacity to attend to a routine; and capacity to perform low stress and simple tasks. AR at 764. They found her GAF score to be 57.

On both October 22, 2015 and January 28, 2016, treating therapist at Catholic Family Center Priscilla Cortes, LMHCP, determined that plaintiff would have the same exact limitations noted by Therapists Hancock and Shoemaker. AR at 768, 773. Therapist Cortes also opined on October 27, 2015, that plaintiff would have marked limitations in ability to maintain a schedule, and ability to work with others without being distracted by them. AR at 635.

Plaintiff's next therapist at Catholic Family Center, Jane Keptner, LMSW, saw plaintiff approximately ten times in the period of a year, and confirmed many of Dr. Beecher's mental health opinions. See AR at 758. In each of the three Psychological Assessments for Determination of Employability she completed, she found - again, like Dr. Beecher - plaintiff's capacity to maintain attention and concentration on rote tasks to be "very limited." AR at 752, 756, 760. Therapist Keptner noted that plaintiff had "anxiety, anger, and hallucinations." AR at 750. On December 4, 2014, plaintiff's GAF was evaluated as 57 (AR at 752); on February 6, 2015, her GAF was 60 (AR at 756); and on May 13, 2015, her GAF was 57 (AR at 760).

10

At the time the ALJ rendered his decision he was bound to apply the treating physician rule. The treating physician rule, set forth in the Commissioner's own regulations, "mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); see 20 C.F.R. § 416.927(d)(2)("Generally, we give more weight to medical opinions from your treating sources."). Where, as here, an ALJ gives a treating physician opinion something less than "controlling weight," he must provide good reasons for doing so. Our circuit has consistently instructed that the failure to provide good reasons for not crediting the opinion of a plaintiff's treating physician is a ground for remand. See Schaal v. Apfel, 134 F.3d 496, 503-05 (2d Cir. 1998); see also Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) ("The SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant."); Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004) (per curiam) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician['s] opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

11

Our circuit has also been blunt on what an ALJ must do when deciding not to give controlling weight to a treating physician:

> To override the opinion of the treating physician, we have held that the ALJ must <u>explicitly</u> consider, <u>inter alia</u>: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist. After considering the above factors, the ALJ <u>must comprehensively set forth his reasons</u> for the weight assigned to a treating physician's opinion. The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand. The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion.

Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (emphasis added) (internal citations, quotations and alterations omitted).

The ALJ here did not engage in the required analysis and the reasons given for assigning "little weight" to Dr. Beecher and other treating providers did not meet the "good reasons" threshold. The ALJ stated that Dr. Beecher's opinions were not entitled to controlling weight because they contradicted the medical evidence in the record. But as set forth above, and what a fair reading of the record confirms, is that the only thing Dr. Beecher's opinions contradict are the opinions from (1) a non-examining "psychological consultant" who never had the benefit of even reviewing the entire medical record and (2) a non-treating psychologist who changed her opinion without explanation or

12

inquiry. The ALJ also stated that Dr. Beecher's opinion cannot be given controlling weight because, in part, it is inconsistent with Dr. Ransom's opinion. But Dr. Ransom only saw plaintiff twice; while Dr. Beecher evaluated Cochran countless times over more than 20 years, a fact the ALJ failed to address. See Richardson v. Barnhart, 443 F. Supp. 2d 411, 418 (W.D.N.Y. 2006) (ALJ erred in giving treating doctor less than controlling weight where "[h]is decision did not address the length of the treatment relationship between [the treating doctor] and plaintiff, nor did it address the frequency of examinations, nor the nature or the extent of the treatment relationship."). In short, the ALJ did not follow the treating physician rule.[1] Walls v. Barnhart, No. CIV.A. 01-2361, 2002 WL 485641, at *16 (E.D. Pa. Mar. 28, 2002) ("Here I cannot find that the ALJ's choice to discredit entirely the testimony of the treating physician and to rely exclusively on the report of a non-treating physician who never examined the patient to be supported by substantial evidence.").

---

[1] The ALJ also discounted treating opinions because he believed that they were all based on plaintiff's self-reporting. But self-reporting is not inherently inaccurate and can be useful as a diagnostic tool where, as here, they are explored further by a treating professional. Such self-reporting constitutes medically acceptable clinical and laboratory diagnostic technique, and should be considered in a medical examiner's assessment of a claimant. Cammy v. Colvin, No. 12-CV-5810 KAM, 2015 WL 6029187, at *15 (E.D.N.Y. Oct. 15, 2015) (citing Green-Younger, 335 F.3d at 107 (noting that medically acceptable clinical and laboratory diagnostic techniques include consideration of a "patient's report of complaints, or history, [a]s an essential diagnostic tool")). The medical evidence here, even if based in part on plaintiff's self-reporting, is overwhelmingly consistent with Dr. Beecher's mental health assessments.

The testimony of the vocational expert confirms that had the ALJ credited the mental health limitations found by both Dr. Beecher and plaintiff's treating therapists, plaintiff's "mental limitations" would preclude her from being "able to perform any work in the national economy." AR at 84. By improperly assigning more weight to opinions from non-treating sources and less weight to the opinions of plaintiff's treating providers the ALJ formulated an RFC that was not supported by substantial evidence. Remand is accordingly required.

## Conclusion

For the foregoing reasons, the plaintiff's motion (Docket # 15) is **granted**, the Commissioner's motion for judgment on the pleadings (Docket # 18) is **denied**, and the case is remanded for further proceedings consistent with this Decision and Order.

SO ORDERED.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: June 28, 2019
Rochester, New York